**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT CHARLESTON**

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

**v.**                                     **Criminal No. 2:10-cr-00130**

**TERRY TOMBLIN,**

     **Defendant.**

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant Terry Tomblin through undersigned counsel provides this Sentencing Memorandum in aid of sentencing, currently set for Tuesday, April 23, 2013 at 2:00 p.m.

### A.    *Factual Background*

On March 22, 2011, Terry Tomblin was sentenced to five years' probation for the possession of hydrocodone by misrepresentation, fraud, forgery, deception and subterfuge. (Criminal No. 2:10-cr-130-1.) Like all felons, Tomblin was then prohibited by statute from possessing firearms. Although he was instructed by counsel and the probation officer on this prohibition, Tomblin found it difficult to accept the limitation, believing that it prevented him from protecting his family or being a good father because he could not teach his son to hunt. (This information is offered as explanation and not in mitigation.) Tomblin therefore pawned some of his guns before sentencing, but others he removed to family members' homes believing that he was obeying the letter of the law. (At his arrest in December 2012, agents searched Tomblin's home and determined that there were no firearms or ammunition there.) When the family needed money, Tomblin would have his wife Betty Tomblin take a gun to a pawn shop in Logan

and, likewise, retrieve the guns from pawn when possible.[1] (PSR ¶ 28.) Tomblin also used acquaintances to retrieve guns from pawn. Although there were numerous transactions, the number of guns is relatively small because Tomblin was cycling through the same guns that he had previously owned and did not want to lose. In December 2012, Tomblin asked his sister-in-law to purchase a Glock Model 20, 10 MM semiautomatic pistol from B&B Loans that Tomblin had previously pawned. (PSR ¶¶ 19, 21e.)

On December 31, 2012, Tomblin was stopped for traffic violations and officers discovered the Glock 20 inside Tomblin's boot. (PSR ¶ 9.) Tomblin maintained that the gun was his sister-in-law's and he was simply to check it for safety and accuracy for her. Interviews with those involved show that was untrue. (PSR ¶¶ 29-33.) For this reason, Defendant does not object to the PSR's denial of credit for acceptance of responsibility.

Tomblin's firearm possession led to revocation of his probation and the instant indictment for being a felon in possession of a firearm. The offense conduct is the same for both the probation violation and the indictment. Once relevant conduct is included in the calculation, there is no offense conduct beyond that described and considered in the PSR, excepting Tomblin's failure to inform his probation officer of his arrest.

Other than his violation of the gun laws, Tomblin is a family man who helps around the house, gets his children off to school, and greets them at the end of the day. He has been unable to work since he became disabled in 2003 due to six collapsed discs in his lower back. (PSR ¶ 75.) His wife works 30 hours a week at a department

---

[1] A review of records from Big Eagle Gun & Pawn III of Logan, West Virginia, strongly suggests that the store also used Betty Tomblin's information to transfer guns for individuals unknown to either Tomblin. Purchase forms, required to be completed by the buyer, were filled out in handwriting that does not resemble Mrs. Tomblin's and the ostensible signature is clearly not hers. The guns attributed to Tomblin do not include those with the questionable signatures.

store in Logan while Tomblin takes care of the children and the home.  (PSR ¶ 70.)  His incarceration has also been difficult for the family because Tomblin's father suffers from terminal cancer, but his wife's parents have been helping with the children.    (PSR ¶ 71.)

Tomblin volunteered at the Verdunville VFD for twenty years, but was no longer allowed to participate after his felony conviction.  (PSR ¶ 87.)  According to his wife and mother-in-law, Terry will help anyone in trouble, if he can, and the loss of this opportunity to volunteer was a hard blow.

Tomblin has a number of longstanding psychological problems evidenced by his prior diagnoses of post-traumatic stress disorder, anger management issues, and anxiety.  (PSR ¶ 78.)  He has also been diagnosed with depression and insomnia.[2]  At South Central Regional Jail, Tomblin has been kept in the medical unit for three days for observation due to inability to sleep.  Also at South Central, he has been prescribed Depakote, Trazadone, and Welbutrin, which are all psychoactive medications.

Although the government is now reluctant to use Tomblin as a witness due to his untruthfulness about the ownership of the Glock, Tomblin has provided a substantial amount of information about criminal activity in the Logan area, which resulted in a number of arrests.

### B.    Guideline Calculations

Defendant maintains a single objection to the sentencing guideline calculations of the PSR.  Tomblin acknowledges all the guns attributed to him in the PSR, paragraph 21, except the Winchester model 70 reported in paragraph 21(a).  Tomblin denies ever owning a Winchester firearm, stating that he prefers Remingtons.  The only evidence of

---

[2] See VA record, attached as Ex. 2.

Tomblin's alleged connection with the Winchester model 70 is an unsigned pawn slip ("30 Day Loan Contract"), which is attached as Exhibit 1.

Admittedly, other pawn slips from Big Eagle produced in evidence by the government are also unsigned. However, with regard to the guns indicated on those slips, there is other evidence of Tomblin's possession of these firearms, in particular, Firearms Transaction Records. With regard to the Winchester, there is no additional documentation available. An unsigned contract is not, obviously, a contract. Because this Winchester firearm was ostensibly pawned at Big Eagle, there should be some additional documentation either showing the gun in the Big Eagle inventory or taken from pawn or sold to someone else. The government indicated it would look for additional documentation, but none has been produced. Further, Tomblin was known to Big Eagle Gun & Pawn as a felon who was not welcome in the store, which is why he had his wife and others do his business at the pawn shop. Coupled with Mr. Tomblin's insistence that he has never owned a Winchester firearm, this single document is insufficient to attribute this gun to Tomblin by a preponderance of the evidence.

When the Winchester is removed from the firearm count, the number of firearms is reduced to seven. Per U.S.S.G. § 2K2.1(b)(1)(B), if the offense involved between 3 and 7 firearms, the offense level is increased by 2 levels. For eight firearms (including the Winchester), the offense level is currently increased by 4 levels. (PSR ¶ 45.) If the Winchester is excluded, the Total Offense Level becomes 16. *Id.* ¶ 51. With a Total Offense Level of 16, criminal history category II, the guideline imprisonment range is 24 to 40 months.

**C.     § 3553(a) Sentencing Factors**

The court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a)(2) and shall consider all the factors of § 3553(a). *Id.* The Fourth Circuit Court of Appeals has held that a district court has "extremely broad discretion when determining the weight to be given each of the §3553(a) factors." *United States v. Jeffery,* 631 F.3d 669, 679 (4th Cir.), *cert. denied,* 132 S.Ct. 187 (2011).

**1.     The nature and circumstances of the offense and characteristics of the defendant.**

These factors have been discussed at length above in relation to the guideline calculations.

**2.     The need for the sentence imposed --**

**A.     To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**

Tomblin's offense is serious, particularly because it reflects lack of respect for the law, which is further reflected in his failure to accept responsibility at the time of his arrest. However, Tomblin has never been incarcerated previously. He has now been detained since January 17, 2013. The fact of incarceration has brought home to him the seriousness of the violation and the need to conform his behavior to the requirements of the law in all regards. It is not clear that simply increasing the length of the sentence will make any greater impression on Tomblin's understanding. A guidelines sentence of 24 months will reflect the seriousness of the offense. A term of supervised release will give Tomblin an opportunity to prove his ability to accept legal limitations and eschew all gun possession.

**B&C.** ***To afford adequate deterrence to criminal conduct; [and] to protect the public from further crimes of the defendant;***

Mr. Tomblin will be deterred from criminal conduct once he understands and accepts the absolute prohibition on gun ownership by felons. A guidelines sentence of incarceration followed by a term of supervised release will be sufficient to meet these goals, while allowing Tomblin to prove that the lesson has been learned.

**D.** ***To provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner;***

Tomblin has never received counseling or drug treatment. Instead, he has been prescribed hydrocodone for pain and numerous drugs for psychological problems. If appropriate counseling is not available in prison, such counseling in the community should be recommended during his term of supervised release.

**3&4.** ***The kinds of sentences available; the kinds of sentence and the sentence range established by the sentencing guidelines;***

The PSR and the discussion above cover these considerations.

**5.** ***Any pertinent policy statement;***

No policy statements are pertinent.

**6.** ***The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.***

The sentencing guidelines are calculated to avoid unwarranted sentence disparities and, accordingly, a guideline sentence would satisfy this criterion.

## Conclusion

Defendant moves the Court to sentence him to a guideline sentence of 24 months incarceration followed by a term of supervised release. He further requests that

any sentence for his probation violation run concurrently with the sentence for the instant conviction because the offenses are comprised of the same conduct.

**Respectfully submitted,**

**TERRY TOMBLIN**
**By counsel**

**/s/ Deirdre H. Purdy__**
Deirdre H. Purdy  (WVSB #7779)
407 Jarvis Road
Chloe, WV 25235
deirdre.purdy@gmail.com
304.655.7232 (phone)
304.551.0055 (fax)
*Counsel for Defendant*

## Certificate of Service

I, Deirdre Purdy, hereby certify that on April 15, 2013, I filed the foregoing

**DEFENDANT'S SENTENCING MEMORANDUM** in the CM/ECF system for delivery to:

Steven I. Loew
Assistant United States Attorney
300 Virginia Street, East
Suite 4000
Charleston, WV 25301
Steven.loew2@usdoj.gov

**s/Deirdre Purdy**
Deirdre Purdy