IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

```
_____x
                             :
UNITED STATES OF AMERICA,     :        Criminal Action
                             :
            Plaintiff,        :        No.  2:13-cr-00032
                             :
v.                            :
                             :        Date:  February 11, 2013
TERRY TOMBLIN,                :
                             :
            Defendant.        :
_____x
```

TRANSCRIPT OF PLEA HEARING HELD
BEFORE THE HONORABLE THOMAS E. JOHNSTON, JUDGE
UNITED STATES DISTRICT COURT
IN CHARLESTON, WEST VIRGINIA

APPEARANCES:

For the Government:          AUSA STEVEN I. LOEW
                             U.S. Attorney's Office
                             P.O. Box 1713
                             Charleston, WV  25326-1713

For the Defendant:           DEIRDRE H. PURDY, ESQ.
                             407 Jarvis Rd.
                             Chloe, WV  25235

Probation Officer:           Kiara Moore

Court Reporter:              Ayme Cochran, RPR, CRR

Proceedings recorded by mechanical stenography;
transcript produced by computer.

1    PROCEEDINGS had before The Honorable Thomas E. Johnston,

2  Judge, United States District Court, Southern District of West

3  Virginia, in Charleston, West Virginia, on February 11, 2013, at

4  3:02 p.m., as follows:

5    COURTROOM DEPUTY CLERK:  The matter before the Court is

6  the United States v. Terry Tomblin, criminal action number

7  2:13-cr-32, scheduled for plea hearing.

8    THE COURT:  Good afternoon.  Will counsel please note

9  their appearances?

10    MR. LOEW:  Good afternoon, Your Honor.  Steve Loew for

11  the United States and seated at counsel table is Special Agent

12  Rob Cunningham with ATF.

13    MS. PURDY:  Good afternoon, Judge Johnston.  Deirdre

14  Purdy representing the defendant, who is present in person, Terry

15  R. Tomblin.

16    THE COURT:  Good afternoon.  Mr. Tomblin, will you

17  please stand, and I will ask the deputy clerk to administer an

18  oath to you at this time.

19    COURTROOM DEPUTY CLERK:  Please raise your right hand.

20    **TERRY TOMBLIN, DEFENDANT, SWORN**

21    COURTROOM DEPUTY CLERK:  Thank you.

22    THE COURT:  You may be seated.

23    Mr. Tomblin, do you understand that you are now under oath

24  and you must tell the truth and, if you testify falsely, you may

25  face prosecution for perjury or for making a false statement?

THE DEFENDANT:  Yes.

THE COURT:  Throughout the course of this hearing, I I'm going to be asking you a number of questions and I want to make sure that you and I are communicating clearly.  So if at any time I ask a question that you don't understand, or anything else occurs in this hearing that you don't understand, I want you to feel free to speak up and seek clarification.

Also, if at any time you need to confer with your attorney, I'll be pleased to pause the proceedings to allow you to do so.  Do you understand all that?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Let me begin by asking you, how old are you?

THE DEFENDANT:  43.

THE COURT:  And can you briefly describe your educational background?

THE DEFENDANT:  I graduated.  Honor roll, high school.  I have some college, military.

THE COURT:  All right.  And can you read and write and understand the English language?

THE DEFENDANT:  Yes, sir.

THE COURT:  Can you briefly describe your work experience?

THE DEFENDANT:  Haul explosives.  Tractor trailer for about 19 years.  Got hurt in a wreck.  And that's all I've ever

1    done.

2              THE COURT:  I'm sorry?

3              THE DEFENDANT:  I said that's all I've ever done, drove

4    a truck, run equipment, stuff like that.

5              THE COURT:  All right.  Have you taken any drugs or

6    consumed any alcoholic beverages within the last 24 hours?

7              THE DEFENDANT:  No, sir.

8              THE COURT:  Including prescription drugs?

9              THE DEFENDANT:  No, sir.

10             THE COURT:  Have you ever been treated for any mental

11   illness or addiction to drugs of any kind?

12             THE DEFENDANT:  No drugs, sir.  I was treated at the VA

13   Hospital for PTSD and that type stuff.  I just -- no drug habits

14   though.

15             THE COURT:  All right.  And when were you treated for

16   the PTSD?

17             THE DEFENDANT:  Shortly after my discharge from the

18   Marine Corp in '91, up until about five years ago.  I quit going.

19             THE COURT:  All right.  And was this outpatient

20   treatment?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Counseling?

23             THE DEFENDANT:  Yes.

24             THE COURT:  All right.  Did you ever receive any

25   medication for that?

THE DEFENDANT:  Yes.

THE COURT:  What was that?

THE DEFENDANT:  About four different kinds.  It was Trazodone, Wellbutrin, Depakote and something else.  About 1,500 milligrams a day.

THE COURT:  Okay.  All right.  Do you know where you are and why you are here today?

THE DEFENDANT:  Yes.

THE COURT:  And do you have any hearing impairment or other disability which would prevent you from fully participating in this hearing today?

THE DEFENDANT:  No.

THE COURT:  All right.  And, Ms. Purdy, do you have any reason to question the competence of your client?

MS. PURDY:  None, Your Honor.

THE COURT:  All right.  I note that the original plea agreement appears to have been tendered to the Court.  Let me take a quick look at it here.

Mr. Tomblin, is that your signature that appears on page 6 of the plea agreement?

THE DEFENDANT:  Yes.

THE COURT:  And are those your initials that appear on the other pages of the plea agreement?

THE DEFENDANT:  Yes.

THE COURT:  And have you reviewed with your -- read and

1    reviewed with your attorney each of the 15 paragraphs of this

2    plea agreement and the exhibit attached to the plea agreement?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Do you wish to have the various terms of

5    the plea agreement orally stated on the record or do you believe

6    that that is unnecessary?

7              THE DEFENDANT:  She already explained it to me, sir.

8              THE COURT:  All right.  So do you believe it is

9    unnecessary that that be placed on the record here today?

10             THE DEFENDANT:  Yes.

11             THE COURT:  All right.  And do you understand and agree

12   with all of the terms and provisions contained in the plea

13   agreement?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  You understand and agree with all of the

16   plea agreement?

17             THE DEFENDANT:  Yes.

18             THE COURT:  All right.  And, Ms. Purdy, have you

19   reviewed each of the 15 paragraphs of the plea agreement, as well

20   as the exhibit, with your client?

21             MS. PURDY:  Yes, Your Honor, line by line.

22             THE COURT:  All right.  And to counsel, is there any

23   reason why either of you believe that the various terms of the

24   plea agreement should be orally stated on the record?

25             MR. LOEW:  Your Honor, I don't believe they need to be

stated, but at the appropriate time, I want to make one

clarification regarding one of the paragraphs, when the Court has

questions about the abandonment of a firearm in paragraph 5.

THE COURT: All right. We'll get to that.

Ms. Purdy, do you believe that there's any reason that we

should orally state on the record the plea agreement?

MS. PURDY: No, Your Honor. The agreement itself will

be part of the record. That is sufficient.

THE COURT: All right. Very well.

All right. Well, Mr. Tomblin, nonetheless, I would like to

talk with you about certain provisions of the plea agreement and,

actually, I intend to begin that discussion with Section 5, which

is entitled "Abandonment of Firearm", and it's on page 2.

Mr. Loew, did you have something to offer on that?

MR. LOEW: Yes. I was just going to represent to the

Court, just in case it may seem like a separate agreement, the

United States has some information that a relative of the

defendant purchased the firearm and, as part of the abandonment

procedure, if she's not prohibited and she can, I guess, produce

evidence to us that she truly was the owner, then we would return

the firearm to her.

THE COURT: All right. Is that your understanding, Ms.

Purdy?

MS. PURDY: It is, and I appreciate having that on the

record.

1    THE COURT:  All right.  Very well.

2    Well, Mr. Tomblin, Section 5 of the plea agreement is

3    entitled "Abandonment of Firearm" and it essentially provides

4    that you're going to give up this Glock model 20 to the

5    government and waive any right that you have to it.  Do you

6    understand that?

7    THE DEFENDANT:  Yes.  Right.  Yes.

8    THE COURT:  Do you understand that you are giving up

9    the gun to the government?

10   THE DEFENDANT:  Yes.

11   THE COURT:  And you are waiving any right that you have

12   to it?

13   THE DEFENDANT:  Yes.

14   THE COURT:  And do you understand that a "waiver" is a

15   legal term that means you are giving something up?

16   THE DEFENDANT:  Yes.

17   THE COURT:  All right.  Now and you understand -- you

18   heard what the government just said.  There's apparently some

19   relative of yours that might claim ownership of that gun and, if

20   they can confirm that, rather than destroy it, as is indicated in

21   this paragraph, they may give it back to that person?

22   THE DEFENDANT:  Yes.  She purchased it, sir.  Yes, sir.

23   THE COURT:  All right.  All right.  Very well.

24   Moving along then, I want to now refer you to Section 10 of

25   the plea agreement, which begins on Page 3 and runs onto Page 4,

and is entitled "Stipulation of Facts and Waiver of Federal Rule of Evidence 410".  Now this section relates to a couple of different matters, the first of which is the stipulation of facts, which is attached to the plea agreement as Exhibit A, and I want to turn your attention to that document now.  That is a two-page document and, on the second page, is that your signature which appears there?

THE DEFENDANT:  Yes.

THE COURT:  And have you read the stipulation of facts?

THE DEFENDANT:  Yes.

THE COURT:  And do you agree that all of the facts contained in the stipulation are true?

THE DEFENDANT:  Yes.

THE COURT:  All right.  A little bit about what will be happening from here on out.  I will be asking the probation officer to prepare a Presentence Investigation Report.  That report will contain detailed recommended factual findings regarding this offense and your background, among other things.  Ultimately, at sentencing, I will make factual findings based at least in part on the recommendations contained in the Presentence Report.

Now you and the government have reached an agreement regarding the facts contained in this stipulation, but I want you to understand that in this process, neither the Probation Office, nor this Court, are bound by the Stipulation of Facts.  Do you

1　understand that?

2　　　　　　THE DEFENDANT:　Yes.

3　　　　　　THE COURT:　And do you further understand that if I

4　make findings of fact at sentencing that are different from or

5　inconsistent with the facts contained in the stipulation, you

6　will still be bound by your guilty plea and would have no right

7　to withdraw it?　Do you understand that?

8　　　　　　THE DEFENDANT:　Yes.

9　　　　　　THE COURT:　All right.　The other matter addressed in

10　Section 10 then is a waiver of Federal Rule of Evidence 410.　Now

11　Rule 410 generally provides that information or documents

12　regarding plea negotiations, and this stipulation would fall into

13　that category, are generally not admissible at trial; in other

14　words, the government can't usually use that kind of information

15　against you at trial.

16　　　However, under this agreement, if you withdraw from the

17　agreement, or if it's no longer any good because you have

18　violated one or more of its terms and there is a subsequent

19　trial, then the government would be permitted to present the

20　Stipulation of Facts in its case in chief or for other purposes

21　at that trial.　Do you understand that waiver?

22　　　　　　THE DEFENDANT:　Yes.

23　　　　　　THE COURT:　All right.　Next, I want to refer you to

24　Section 11 of the plea agreement, which appears on Page 4, and is

25　entitled "Waiver of Appeal and Collateral Attack".

1      Now there are some preliminary things I want to talk with

2 you about before we get into this, and that is that this section

3 refers to a couple of different procedures that I want to explain

4 to you briefly now.

5      An "appeal" is a procedure by which a party before a

6 District Court like this one and, in a criminal case, it's often

7 the defendant, goes to the Court of Appeals, which is the next

8 level up of the court system, and argues that certain errors or

9 mistakes may have taken place in their case before the District

10 Court.

11      A "collateral attack", which is sometimes referred to as a

12 "habeas corpus petition", is a separate civil case that may be

13 filed after a defendant's criminal case is over in which the

14 defendant may also argue that certain errors or mistakes may have

15 taken place in their criminal case before the District Court.

16      Now do you understand those two procedures, at least as I

17 have briefly described them to you?

18      THE DEFENDANT:  Yes.

19      THE COURT:  All right.  Then in the first paragraph of

20 Section 11, there is an appeal waiver, and I want to go over that

21 with you now.  Do you understand that you waive the right to

22 appeal any sentence of imprisonment, fine, or term of supervised

23 release, or the manner in which the sentence was determined on

24 any ground whatsoever, with one exception, you may appeal any

25 sentence that exceeds the maximum penalty prescribed by statute.

1    Do you understand that waiver?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  Anything about it that you don't understand

4    or have questions about?

5                    THE DEFENDANT:  No, sir.

6                    THE COURT:  And -- all right then.  In the second

7    paragraph, do you also understand that you may not file a later

8    civil proceeding, sometimes referred to as a "collateral attack"

9    or a "habeas corpus petition", challenging your plea, conviction

10   or sentence?

11                   THE DEFENDANT:  Yes.

12                   THE COURT:  And, finally, do you understand that you

13   are in no event waiving your right to claim ineffective

14   assistance of counsel either on appeal or by collateral attack?

15                   THE DEFENDANT:  Yes.

16                   THE COURT:  All right.  Finally, I want to turn your

17   attention to Section 12 of the plea agreement, which begins on

18   Page 4 and runs over onto Page 5.  It's entitled "Waiver of FOIA

19   and Privacy Right".  Now this waiver means that you can't go back

20   after this case is over and seek documents or other information

21   about this case from the government even with a Freedom of

22   Information Act request.  Do you understand this waiver?

23                   THE DEFENDANT:  Yes, sir.

24                   THE COURT:  All right.  And, Ms. Purdy, have you

25   thoroughly reviewed the plea agreement with your client?

1          MS. PURDY:  I have.

2          THE COURT:  And do you believe that he understands the

3     various terms and conditions and provisions of the plea

4     agreement, including the waivers and other matters that I have

5     gone over with him this afternoon?

6          MS. PURDY:  Yes, Your Honor.

7          THE COURT:  And, Mr. Tomblin, have you reviewed the

8     plea agreement in detail with your attorney?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  And do you believe that you have had

11    adequate time to discuss your case fully with your attorney?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Has your attorney answered any questions

14    that you have had about your case?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  And, Ms. Purdy, during your representation

17    of the defendant, has he been cooperative?

18         MS. PURDY:  He has.

19         THE COURT:  And, Mr. Tomblin, has anything further been

20    agreed to, either orally or in writing, that is not contained in

21    the plea agreement, other than the clarification Mr. Loew made

22    earlier about the gun maybe going back to a relative of yours?

23         THE DEFENDANT:  No.  No, sir.

24         THE COURT:  All right.  I will order that the plea

25    agreement be filed.

1        I will find that the defendant understands and agrees with

2    the terms contained in the plea agreement.

3        I will defer accepting or rejecting the plea agreement until

4    sentencing, after the Presentence Report has been received and

5    considered.

6        Now, Mr. Tomblin, have you received and read and reviewed

7    with your attorney a copy of the indictment returned against you

8    by the federal grand jury?

9            THE DEFENDANT:  Yes.

10            THE COURT:  And do you understand the charge contained

11    in the indictment?

12            THE DEFENDANT:  Yes, sir.

13            THE COURT:  And would you like me to read the

14    indictment to you or will you waive the reading of the

15    indictment?

16            THE DEFENDANT:  Waive it.

17            THE COURT:  All right.  As I understand it, you will be

18    pleading guilty to a single-count indictment, which charges you

19    with being a felon in possession of a firearm in violation of 18

20    U.S.C. Section 922(g)(1) and Section 924(a)(2).  Now I want to go

21    over those statutes and that charge with you in just a little bit

22    more detail.

23        Section 922(g)(1) provides in pertinent part that:  "It

24    shall be unlawful for any person who has been convicted in any

25    court of a crime punishable by imprisonment for a term exceeding

one year to possess in or affecting interstate commerce any firearm or ammunition."

Section 924(a)(2) further provides that:  "Whoever knowingly violates subsection (g) of Section 922 shall be guilty of a crime against the United States."

Now in order to prove that charge against you, the government would have to prove the following elements of that crime beyond a reasonable doubt, and they are:

First, that you have been convicted in any court of a crime punishable by imprisonment for a term exceeding one year and have not had your civil rights restored;

And, second, you knowingly possessed the firearm described in the indictment;

And, finally, such possession was in or affecting interstate commerce.

Now I want to share with you some definitions and other information which applies to what I have just told you. According to the stipulation, you were previously convicted of possession of hydrocodone by misrepresentation, fraud, forgery, deception and subterfuge in violation of 21 U.S.C. Section 843(a)(3), which is a crime punishable by imprisonment for a term exceeding one year.

The term "firearm" means, A., any weapon which will or is designed to or may readily be converted to expel projectile by action of an explosive; B., the frame or receiver of any such

weapon; C., any firearm muffler or firearm silencer; or, D., any destructive device.

The term "firearm" does not include an antique firearm.

The term "possess" means to exercise control, authority, dominion -- to exercise authority, dominion or control over.

An act is done "knowingly" if done voluntarily and intentionally and not because of mistake or accident or other innocent reason.

"In or affecting interstate commerce" means commerce between any place in a state and any place outside of that state.

Next, I want to go over with you the maximum and any minimum sentences you may face as a result of your plea, and that is a maximum term of imprisonment of ten years. However, there is an exception to that, and I want to make sure you understand that.

Pursuant to 18 U.S.C. Section 924(e)(1), because this is a firearms violation, your sentence can be enhanced if you have three previous convictions by any Court referred to in Section 922(g)(1) of Title 18 for a violent felony, or a serious drug offense, or both, committed on occasions different from one another. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now do you further understand that if you get that sentence enhancement, and I don't know that it applies to you or not, I'm just making sure that you understand this, that if you get that sentencing enhancement, that it would

1    increase your penalties to a mandatory minimum of 15 years up to

2    life?  Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  All right.  So you also face a maximum fine

5    of $250,000.00, or twice the gross pecuniary gain or loss

6    resulting from your conduct, whichever is greater, and a maximum

7    term of supervised release of three years.

8         A mandatory special assessment of $100.00 would be required;

9         And restitution could be ordered if it were found to be

10   applicable.

11        Next, I want to return to our discussion or, actually, I

12   want to talk with you about the federal sentencing guidelines.

13   They are advisory, meaning that they are not mandatory and,

14   therefore, don't have to be followed, but they'll nevertheless

15   play an important role in your case.

16        Has your attorney discussed with you the federal sentencing

17   guidelines and how they might apply in your case?

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  All right.  Now this Court will consider

20   the factors set forth in 18 U.S.C. Section 3553(a), including the

21   advisory guidelines, in determining the appropriate sentence in

22   your case.  I now want to ask you some questions that will help

23   me to understand your understanding of the advisory guidelines.

24        Have you discussed with your attorney the various factors

25   which apply in determining what the sentence in your case may be

1    under the guidelines?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  And do you understand that on Count 1, you

4    cannot in any event receive a greater sentence than the statutory

5    maximum that I explained to you earlier?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Do you understand that the Court will not

8    determine the sentence until a later date, when a Presentence

9    Report has been completed, and both you and the government have

10   had an opportunity to challenge the facts and analysis reported

11   by the probation officer?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Do you understand that under a concept

14   known as "relevant conduct", this Court, in determining the total

15   offense level for sentencing purposes under the guidelines may

16   take into account any conduct, circumstances or injuries relevant

17   to the crime of which you may be convicted?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Do you understand that after the Court has

20   determined what advisory guidelines apply to your case, the Court

21   has the authority to vary or depart from the advisory guidelines

22   and impose a sentence that is more severe or less severe than the

23   sentence called for by the guidelines?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Do you understand that in determining your

sentence, the Court is obligated to calculate the applicable sentencing guideline range and to consider that range, possible departures under the guidelines, and other sentencing factors under 18 U.S.C. Section 3553(a)?

THE DEFENDANT:  Yes.

THE COURT:  And has your attorney explained to you what the sentencing guideline range is?

THE DEFENDANT:  Yes.

THE COURT:  And has she explained to you how a sentencing guideline range is calculated?

THE DEFENDANT:  Yes, she's shown me.

THE COURT:  Did she show you that chart in the back of the book?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Do you understand that parole has been abolished and, if you're sentenced to prison, you will not be released on parole?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand that if the Court accepts your plea of guilty and the sentence ultimately imposed upon you is more severe than you had hoped for or expected, you will still be bound by your guilty plea and would have no right to withdraw it?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand if you plead guilty to

1    Count 1, which is a felony, you may lose important civil rights,

2    such as the right to vote; the right to serve on a jury; the

3    right to hold public office; and the right to own or possess a

4    firearm?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Next, I want to talk with you regarding

7    your trial and constitutional rights.  You have the right to

8    continue to plead not guilty and maintain a not guilty plea

9    throughout these proceedings, including at trial.

10        You have the right to be represented by counsel.

11        You have the right to a speedy and public trial by a jury

12   composed of citizens of this district.

13        You have the right to confront and have your attorney cross

14   examine witnesses and have your attorney move to suppress any

15   evidence she believes was illegally or unconstitutionally

16   obtained.

17        You have the right not to testify or otherwise incriminate

18   yourself and your exercise of this right cannot be held against

19   you.

20        Do you understand these rights so far?

21             THE DEFENDANT:  Yes.

22             THE COURT:  You have the right to have the government

23   come in here and prove its case beyond a reasonable doubt.

24        The jury's verdict would have to be unanimous.

25        You have the right to present evidence on your own behalf.

1          You have the right to testify on your own behalf at trial;

2     and you have the right to subpoena witnesses to testify for you.

3          Do you understand all of these rights?

4               THE DEFENDANT:  Yes.

5               THE COURT:  Any of them that you don't understand or

6     that you have questions about?

7               THE DEFENDANT:  No.

8               THE COURT:  Do you understand that these -- other than

9     your right to counsel, do you understand that these are all

10     rights that you will be giving up by entering a plea of guilty?

11               THE DEFENDANT:  Yes.

12               THE COURT:  Do you understand that once you have

13     entered a plea of guilty, there is not going to be any trial, no

14     jury verdict, and no findings of innocence or guilt based on

15     disputed evidence presented to me or to a jury?

16               THE DEFENDANT:  Yes.

17               THE COURT:  Do you believe that you fully understand

18     the consequences of entering a plea of guilty?

19               THE DEFENDANT:  Yes.

20               THE COURT:  Ms. Purdy, having reviewed this case and

21     the plea agreement in detail with your client, do you believe

22     that he fully understands his rights and fully understands the

23     consequences of entering a plea of guilty?

24               MS. PURDY:  I do, Your Honor.

25               THE COURT:  All right.  We have a stipulation that I --

1    that appears to address the elements of the offense.  Does

2    counsel have any objection to the Court utilizing the stipulation

3    as the factual basis for the plea?

4            MR. BOWLEN:  No objection.

5            MS. PURDY:  No, sir.

6            THE COURT:  The Court will so proceed.

7      Mr. Tomblin, will you please stand?

8      As to the charge contained in Count 1 of the indictment, how

9    do you plead, sir, guilty or not guilty?

10           THE DEFENDANT:  Guilty.

11           THE COURT:  You may be seated.

12      Your counsel has been provided with a written plea of guilty

13    form.  I would ask that you go over that with her, if necessary,

14    sign and date it.  Then I will ask her to sign it and tender it

15    to the Court.

16           MS. PURDY:  May I approach?

17           THE COURT:  You may.

18      All right.  I would note for the record that the defendant

19    has signed and dated the written plea of guilty form; it has been

20    witnessed by his counsel; and I will order that it be made a part

21    of the record for this proceeding.

22      Mr. Tomblin, is this plea the result of any threat or

23    coercion or harassment of you by anyone?

24           THE DEFENDANT:  No.

25           THE COURT:  Is it the result of any promise or

1    inducement other than those contained in the plea agreement?

2                THE DEFENDANT:  No.

3                THE COURT:  Are you pleading guilty to protect anyone?

4                THE DEFENDANT:  No.

5                THE COURT:  Are you acting voluntarily and of your own

6    free will in entering this guilty plea?

7                THE DEFENDANT:  Yes, sir.

8                THE COURT:  Has anyone promised or predicted the exact

9    sentence which will be imposed upon you in this matter?

10               THE DEFENDANT:  No.

11               THE COURT:  Do you understand that no one could know

12   the exact sentence which will be imposed at this time?

13               THE DEFENDANT:  Yes.

14               THE COURT:  Has your attorney adequately represented

15   you in this matter?

16               THE DEFENDANT:  Yes.

17               THE COURT:  Has your attorney left anything undone

18   which you think should have been done?

19               THE DEFENDANT:  No.

20               THE COURT:  Have you or your attorney found any defense

21   to the charge contained in Count 1?

22               THE DEFENDANT:  No.

23               THE COURT:  Are you, in fact, guilty of the crime

24   charged in Count 1?  In other words, did you do it?

25               THE DEFENDANT:  Yes.

1      THE COURT:  All right.  I will find that the defendant

2  is competent and capable of entering an informed plea; that the

3  plea is freely and voluntarily made; that the defendant

4  understands the nature of the charges and is aware of the

5  consequences of the plea.

6      I will find that the defendant understands his rights and

7  understands that he is giving up these rights by entering a plea

8  of guilty.

9      I will find that there is a basis in fact for the tendered

10  plea and that the elements of the crime charged in Count 1 have

11  been established.

12      I will accept the plea of guilty to Count 1, but will defer

13  adjudging the defendant guilty until the time of sentencing.

14      I will ask the probation officer to prepare a Presentence

15  Investigation Report.

16      Mr. Tomblin, it is important that you cooperate fully with

17  the probation officer in the preparation of the Presentence

18  Report.  If you fail to cooperate fully and truthfully with the

19  probation officer, you may be subject to an enhancement of your

20  sentence or the forfeiture of certain sentence reductions for

21  which you might otherwise be eligible.

22      It is also important that you not commit any additional

23  crimes between now and sentencing, as there may be additional

24  punishments imposed for committing additional crimes.

25      I note that the defendant is currently in custody and he

1    will be remanded to the custody of the marshals at the conclusion

2    of this hearing pending sentencing.

3        I now want to give counsel some dates and deadlines with

4    regard to sentencing.  I will direct that a draft Presentence

5    Report be provided to counsel by March 11th, 2013.  Objections

6    will be due on March 25th.  A final Presentence Report will be

7    due to the Court on April 8th.

8        Sentencing memoranda are optional, but if you're going to

9    file them, file them by April 15th, and I will set this matter

10   for sentencing on April 22nd, 2013 at 10:00 a.m.

11       Any other matters we need to take up in this case?

12           MR. LOEW:  No, Your Honor.

13           MS. PURDY:  No, Your Honor.  Thank you.

14           THE COURT:  All right.  Thank you.

15       (Proceedings concluded at 3:29 p.m., February 11, 2013.)

16   CERTIFICATION:

17       I, Ayme A. Cochran, Official Court Reporter, certify that

18   the foregoing is a correct transcript from the record of

19   proceedings in the matter of United States of America, Plaintiff

20   v. Terry Tomblin, Defendant, Criminal Action No. 2:13-cr-00032,

21   as reported on February 11, 2013.

22

23   s/Ayme A. Cochran, RPR, CRR                July 24, 2013

24   Ayme A. Cochran, RPR, CRR                          DATE

25